# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLKIE FARR & GALLAGHER LLP,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NORIDIAN HEALTHCARE SOLUTIONS, LLC,<br><br>and<br><br>CENTERS FOR MEDICARE & MEDICAID SERVICES,<br><br>　　　　　　Defendants. | Civil Action No. 1:23-cv-00452-ABJ |

**DEFENDANT NORIDIAN'S REPLY
TO PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO NORIDIAN'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

ARGUMENT .................................................................................................................... 4

I.      PLAINTIFF'S JURISIDCTIONAL ARGUMENTS ALL FAIL ......................................... 4

    A.  Plaintiff Is Silent As To Whether This Court Can Compel Noridian To Release
        Agency Records It Has No Legal Authority To Release ......................................... 4

    B.  Plaintiff's Amended Complaint Does Not Allege That Noridian Failed To Conduct
        A Reasonable Search, And In Any Event, Such An Allegation Would Have Been
        Premature .................................................................................................... 9

    C.  Plaintiff's Request That This Court Order Noridian To Search For Records Is Moot
        .................................................................................................................... 12

    D.  Plaintiff Still Has Not Demonstrated It Has Standing ........................................... 13

II.     PLAINTIFF DOES NOT COME CLOSE TO ALLEGING THAT NORIDIAN IS A
        GOVERNMENT CONTROLLED ENTITY AND THUS A FOIA AGENCY ............... 16

    A.  Plaintiff Fails To Allege Elements That Demonstrate That Noridian, A Private
        Contractor, Is A Government Controlled Entity ................................................... 17

    B.  All Evidence Outside Of Plaintiff's Amended Complaint Confirms Noridian Is Not
        An Agency .................................................................................................... 22

III.    PLAINTIFF'S CONTENTION THAT NORIDIAN DOES NOT ENJOY IMMUNITY
        FINDS NO SUPPORT IN 50+ YEARS OF LAW ............................................... 23

CONCLUSION .............................................................................................................. 25

Defendant Noridian Healthcare Solutions, LLC (Noridian) respectfully submits this Reply to Plaintiff's Opposition to Noridian's Motion to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, for Summary Judgment (Opposition or Opp.).[1]

Plaintiff blindly seeks relief.  Noridian told Plaintiff shortly after it filed its original complaint that it had searched for Medicare records potentially responsive to the FOIA request.  It told Plaintiff that it, as a Medicare Administrative Contractor, did not have legal authority to release responsive records.  And it told Plaintiff it had forwarded the records to the federal agency that does, CMS.  Plaintiff then amended its complaint to add CMS.  CMS answered.  Last month, CMS told Plaintiff it was "endeavoring" to make its initial production within a week.  CMS's Status Report (ECF No. 30) at 1.  CMS also sent Plaintiff a disclosure determination at the end of September, stating that it was "*withholding* . . . portions" of the record pursuant to "[e]xemption 5 of [] FOIA" (*i.e.*, "the agency's deliberative decision-making process"), that its review of records "remains active and ongoing," and that it "will promptly release all non-exempt records that are responsive to [Plaintiff's] request … having found four hundred thirty pages releasable."  ECF No. 34-4 at 1-2.[2]

Notwithstanding CMS's representations, Plaintiff continues to make several nonsensical assertions: (i) Noridian *possesses* records that CMS confirms it (the agency) now possesses; (ii) Noridian is withholding records from Plaintiff that CMS has clarified it (the agency) is withholding; (iii) Noridian must justify the application of the FOIA exemption CMS has asserted (which Noridian has no authority to defend as the deliberative process privilege belongs to CMS);

---

[1] Unless otherwise indicated, all defined terms in this Reply have the same meaning as in Defendant's Motion to Dismiss Plaintiff's First Amended Complaint or in the Alternative, for Summary Judgment ("Motion" or "Mot.").

[2] That release may have begun, which CMS would be expected to address in its next status report to the Court.

(iv) Noridian must be ordered to search for records CMS has said it (the agency) has received and is reviewing; and (v)—notwithstanding twenty-year-old agency guidance that proscribes it from doing so without CMS's express direction—Noridian must release records CMS has said it (the agency) will release and, by now, may have released.  Incredibly, Plaintiff also asserts that CMS's recent disclosure determination "does not in any way impact Noridian's arguments presented in [its] Motion" or "warrant dismissing Noridian from this case."  Opp. at 12 n.14.  Plaintiff's assertions are implausible, frivolous, evince bad faith, and appear to have been made for the improper purpose of applying pressure on Noridian designed to compel CMS to either prioritize Plaintiff's request over others or sidestep altogether the statutorily-sanctioned, agency-driven FOIA process.  Neither FOIA nor the courts have held that agency and government contractor may have distinct and severable FOIA obligations.  Here, an agency's directive to its contractor, memorialized in agency guidance, that it assist in the processing of FOIA requests, does not grant separate rights of FOIA appeal to the requester or turn the contractor into a federal agency.

Yet, even assuming Noridian is an agency (it is not), this Court may exercise jurisdiction over Noridian only if it is improperly *withholding* agency records.  *Kissinger v. Reporters Comm. For Freedom of Press*, 445 U.S. 136, 150 (1980).  As an initial matter, the records in question are Medicare program records under CMS's control.  Noridian certainly cannot *withhold* Medicare records it does not possess, control, or have legal authority to release, and which CMS itself has confirmed it is withholding while continuing to review documents for release or withholding due to an applicable exemption.

Plaintiff's implausible arguments do not end there.  Plaintiff argues that Noridian must show *via* affidavit and other evidence that it conducted a reasonable search and did not improperly withhold records.  Opp. at 18.  But Plaintiff did not allege that Noridian's search methods are

inadequate; nor could it because at the time of Plaintiff's Amended Complaint, CMS had yet to issue its disclosure determination or produce any records.

But there is more: In arguing that Noridian is a government controlled entity and thus an agency for purposes of FOIA, Plaintiff stretches its factual allegations, relies primarily on inapposite case law, and even claims that Noridian's website and its counsel "have represented" that Noridian is an agency. Opp. at 28. Noridian and its counsel did no such thing. Plaintiff's misrepresentation is alarming in light of Noridian's repeated, written assertions to the contrary. Am. Compl. Ex. 5 (ECF No. 13-5) at 1 ("[A]s I [Noridian counsel] previously explained, [] Noridian is a Medicare Administrative Contractor and not an 'agency' as defined by [] FOIA[.]").

Assuming the Court reaches this issue, Plaintiff does not come close to alleging that Noridian is a government controlled entity. We encourage the Court to look beyond the four corners of Plaintiff's Amended Complaint—where the text of the statute that created Medicare Administrative Contractors, HHS regulations, and CMS guidance all lead to the same conclusion: "Noridian is not an 'agency' within the meaning of FOIA." CMS's Amended Answer To First Amended Complaint (Amended Answer), ¶ 2 (ECF No. 28). Contrary to Plaintiff's assertion, the Court does not need an affidavit from Noridian to conclude that established Medicare law identifies MACs as retaining their private entity status. Importantly, the Amended Complaint does not allege that Noridian somehow stepped outside the MAC role contemplated by that law.

Additionally, Plaintiff still has not demonstrated it has standing to pursue this suit and, in particular, has nothing to say about the fact that it sent its FOIA request to Noridian along with a fax transmittal page addressed to a California medical lab that highlights its Medicare participation on its website home page.[3] Curiously, while that transmittal page accompanied the FOIA request

---

[3] *See* CareDx, at https://caredx.com/.

attached to the original complaint, Plaintiff removed it from the FOIA request attached to its Amended Complaint.  Plaintiff's silence speaks volumes.  It is just as plausible that Mr. Reddick sent his FOIA request on behalf of the lab, and not his law firm.  It is that lack of clarity that withholds standing from Plaintiff under this Court's rationale in *SAE Prods., Inc. v. FBI,* 589 F.Supp.2d 76 (D.D.C. 2008).

Finally, Noridian should be afforded immunity from suit because CMS is the real party in interest in this suit and Plaintiff does not request any relief from Noridian that CMS cannot provide.

## ARGUMENT

## I.    PLAINTIFF'S JURISIDCTIONAL ARGUMENTS ALL FAIL

Plaintiff's jurisdictional arguments conflate different issues, fail to grapple with facts of which this Court may take judicial notice, rest on inapposite case law, and effectively seek to amend its complaint for a second time by alleging facts absent from its Amended Complaint.

### A.    Plaintiff Is Silent As To Whether This Court Can Compel Noridian To Release Agency Records It Has No Legal Authority To Release

Plaintiff has not satisfied its burden of establishing that this Court has subject matter jurisdiction over Noridian.  *First*, Plaintiff's contention that its "injury is clearly traceable to Noridian [because Noridian] has failed to produce . . . responsive records" (Opp. at 17) elides the fact that CMS's FOIA Policy and Procedural Instructions manual (CMS FOIA Policy)[4]—of which this Court may take judicial notice[5]—proscribes Noridian, as CMS's contractor, from producing

---

[4] CMS, *CMS Freedom of Information Act (FOIA) Policy and Procedural Instructions,* Exhibit A, §30.7, https://www.cms.gov/regulations-and-guidance/legislation/foia/downloads/foiaprocessingpolicyprocceduresguide-.pdf.

[5] The parties agree this Court may take "judicial notice of information posted on official public websites of government agencies."  *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).  *See also* Opp. at 4 n.2; Mot. at 5 n.4.  Because CMS's FOIA Policy and CMS's Internet Only Manual (IOM) are posted on CMS's public website, this Court may take judicial notice of both the Instructions and IOM.

the requested agency records directly to the requestor.  *See* Mot. at 2 (ECF No. 23-1).[6]  Rather, Noridian is directed to send the records to CMS for a release determination.

FOIA "confers jurisdiction in the district court only to enjoin an agency from improperly withholding records that are in its *possession and control* at the time of the FOIA request." *Francis v. U.S. Dep't of Justice*, 267 F.Supp.3d 9, 12 (D.D.C.) (2017) (emphasis added).  Noridian does not dispute that as a Medicare contractor, it was in possession of the FOIA records at the time of Mr. Reddick's FOIA request.  *See* Mot. at 1.  However, nearly three months *before* Plaintiff filed its Amended Complaint, Noridian conducted a reasonable search for the requested records, and consistent with CMS FOIA Policy, forwarded *potentially* responsive records to CMS for its review and release, as CMS deemed appropriate.  *See id*. at 2 (citing Am. Compl. ¶ 36, Ex. 5).  Noridian then shared its actions with Plaintiff.  *Id.* at Ex. 8.  These are the agency records that CMS has told Plaintiff it is "endeavoring" (and may have begun) to produce.  CMS's Status Report (ECF No. 30) at 1.  Noridian thus is not *currently* in possession of the records, and, importantly, it never had *control* over their release.  "If the agency is no longer in possession of the document, for a reason *that is not itself suspect*, FOIA does not compel the agency to take further action in order to produce that document."[7]  *DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C. Cir. 2015) (Army transferred documents to National Archives after receiving FOIA request) (emphasis included) (internal quotation marks omitted).

Plaintiff does not allege that Noridian acted improperly when it forwarded the records to CMS, nor could it.  Plaintiff's belated attempt to do so in its Opposition is improper.  *See Singh v.*

---

[6] Plaintiff's contention that Noridian "provides no admissible extrinsic evidence to rebut Plaintiff's allegations that Noridian was obligated to produce the requested records" to Plaintiff (Opp. at 22) is flatly refuted by CMS's FOIA Policy.

[7] Thus, even if Noridian were an agency distinct from CMS, FOIA does not require Noridian to take further action and seek return of the records from CMS.

*District of Columbia*, 55 F.Supp.3d 55, 70 (D.D.C. 2014) ("[A] party may not amend his complaint through an opposition brief.").

Plaintiff also gets it wrong when it asserts that Noridian is attempting to evade its FOIA requirements by "passing the baton to [CMS]" (Opp. at 17) (*citing Unrow Hum. Rts. Impact Litig. Clinic v. U.S. Dep't of State*, 134 F.Supp.3d 263, 279 (D.D.C. 2015)).   Rather, Noridian is following binding agency policy, which it is contractually required to follow as a MAC. *See United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 511 (4th Cir. 1999) (holding that Health Care Finance Administration's (today, CMS) "contract carriers [(MAC predecessors)], while not parties to th[e] action because the [HCFA] is the real party in interest, are in privity with [agency] and therefore are bound by orders directed at [the agency] and its carriers[.]") (emphasis added)).   Plaintiff's reliance on *Unrow* is confounding given that the case is fatal to Plaintiff's argument.   In *Unrow*, the plaintiff alleged that because the Department of Intelligence (DIA) possessed a document responsive to the FOIA request, DIA was obligated to make an independent disclosure determination, and that referring the document to the agency with legal authority to release the documents (the United States Department of State) did not absolve DIA of this responsibility. *Unrow*, 134 F.Supp.3d at 280.   The Court rejected plaintiff's argument and upheld the DIA's decision to forward responsive documents to the Department of State rather than release the documents *itself* "after [DIA] determined that *[it did not have] the legal authority to make the disclosure determination*." *Id*. (emphasis added).   Here, Plaintiff does not dispute that Noridian lacks the legal authority to release the requested FOIA records, but argues that whether Noridian "may release [the requested records] without further review has nothing to do with *Plaintiff's standing* under FOIA." Opp. at 21 (emphasis added).   This confuses the issue.   While CMS's policy that prohibits Noridian from releasing the requested records does not bear on Plaintiff's

6

standing to assert its FOIA claims against CMS, the federal agency withholding the records, it has everything to do with whether Plaintiff can show that its injury (*i.e.*, the withholding of records) is traceable to Noridian.  It cannot.  Plaintiff's injuries will not be redressed by its request for judicial redress from Noridian because at all times Noridian lacked control over the records and the legal authority to release them.  *See DiBacco*, 795 F.3d at 192.  In sum, Noridian did not improperly withhold records from Plaintiff, but it would have been improper for Noridian to have released them to Plaintiff.

*Second*, Plaintiff does not allege—and its opposing brief does not address—whether Noridian *controlled* these records at the time of Plaintiff's FOIA request.  It did not.  HHS regulations confirm that records maintained by Medicare contractors in the course of performing work under a contractual agreement are "maintained on behalf of [the] agency" and are "considered [] agency record[s]."  45 C.F.R. § 5.3.  Although Noridian is responsible for developing "[s]tandards, procedures, and techniques designed to assure the maintenance and security of [Medicare] records," CMS has "*control[] over the creation of records*."[8]  Thus, HHS regulations and guidelines are clear that Medicare records belong to and are controlled by CMS, *not MACs*.  *See* CMS's Response To Plaintiff's Opposition (ECF No. 36) at 3.  Because Plaintiff does not allege that Noridian controls the requested records, and because the records are no longer in Noridian's possession, this Court lacks subject matter jurisdiction over Noridian.  Noridian cannot produce records it currently does not possess, and it cannot produce records it does not control and was never given authority to control.

---

[8] *See* CMS, Medicare Internet Only Manual 100-01 (Medicare General Information, Eligibility and Entitlement), *Chapter 7 - Contract Administrative Requirements*, § 30.10 (Medicare Records and Disposal Schedule): https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/ge101c07.pdf.

To the extent any doubt remains on this issue, CMS—the agency that currently possesses these records and has legal authority to produce them—informed Plaintiff and this Court that it is "endeavoring to make its initial production[.]"  CMS's Status Report (ECF No. 30) at 1.  CMS issued Plaintiff a disclosure determination stating it had identified responsive records and was "withholding, in part, portions of [them] pursuant to Exemption 5 of [] FOIA" (*i.e.*, the agency's deliberative decision-making process privilege); that its "review of records . . . responsive to [the] request remains active and ongoing[;]" and that it "will promptly release all non-exempt records that are responsive to [the] request."  Opp., Ex. 4 (ECF No. 34-4) at 1-2.

Nevertheless, Plaintiff argues that (i) Noridian must produce records (Opp. at 23) CMS is endeavoring to produce, (ii) Noridian must justify the application of exemptions (Opp. at 21) CMS has asserted, and (iii) CMS's release determination "does not in any way impact Noridian's arguments . . . []or  . . . warrant dismissing Noridian from this suit."  Opp. at 12 n.14.  But Noridian cannot withhold records that CMS has *confirmed* it, the agency, is withholding; nor can Noridian justify that withholding on the basis of an exemption it did not assert, had no knowledge had been asserted until Plaintiff shared that determination in its Opposition, and has no authority to assert.[9] That legal right belongs to the agency that controls the records in issue.  Plaintiff's contention is made in bad faith and contradicts its prior assertion that CMS may withhold responsive documents. Am. Compl. Ex. 7 at 3 ("Plaintiff [will] review the responsive records to determine if any further action is needed with regards to *CMS's withholding ....*") (emphasis added).

*Third*, Plaintiff's assertion that its injury is redressable because "an agency must 'demonstrate that it has made a good faith effort to conduct a search for the requested records . . .'

---

[9] *See PHE, Inc. v. U.S. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993) (stating an agency bears the burden to justify exemptions under FOIA).

and must 'show that materials that are withheld . . . fall within a FOIA statutory exemption'" (Opp. at 18) again confuses distinct jurisdictional issues.  Noridian does not take a position as to whether Plaintiff may, as it has done in its Amended Complaint, seek redress against the agency that currently possesses and controls the records at issue.  Rather, Noridian argues that Plaintiff cannot obtain the relief it seeks *from Noridian* because, as demonstrated above, its alleged injury (*i.e.*, the withholding of agency records) is not traceable to Noridian because it is not withholding any agency records.  At bottom, Plaintiff conflates whether its claims are redressable with whether this Court can order *Noridian*—as opposed to another entity (*e.g.*, CMS)—to provide that redress.

### B.   Plaintiff's Amended Complaint Does Not Allege That Noridian Failed To Conduct A Reasonable Search, And In Any Event, Such An Allegation Would Have Been Premature

Plaintiff's contention that this Court can order Noridian to show that it conducted a reasonable search (Opp. at 17) fails because, as discussed above, Noridian does not currently possess or control the requested records.  "What Plaintiff[] want[s] to happen now is *beyond the purview of FOIA*.  To the extent that the records [it] seek[s] are outside [Noridian's] possession and control, [Noridian] is not required to search for them."  *Veterans for a Strong Am. v. Dep't of State*, 211 F.Supp.3d 182, 192-93 (D.D.C. 2016) ("emphasis added).  This new argument by Plaintiff appears to be an effort to salvage its suit against Noridian, as its Amended Complaint does not challenge the adequacy of Noridian's search methods.  Assuming it did, such a challenge could not succeed.

*First*, while "a FOIA requester may challenge the adequacy of [an] agency's search for responsive records," *Bigwood v. U.S. Dep't of Defense*, 132 F.Supp.3d 124, 135 (D.D.C. 2015), the conduct Plaintiff challenged in its Amended Complaint was "Noridian's . . . failure to make a

determination or any production within the required time period" (Am. Compl. ¶ 45), not that Noridian's identification and retrieval efforts or search methods were inadequate.

While Plaintiff's Amended Complaint restates FOIA's mandate that an agency shall make "reasonable" efforts to "search for records," *Id.* ¶ 53 (citing 5 U.S.C. § 552(a)(3)), it is devoid of any allegation that Noridian violated this obligation.  And even if it had made this allegation, such a challenge would have been factually implausible given that at the time Plaintiff filed its Amended Complaint, CMS had yet to issue its disclosure determination and release documents.  Thus, at that time, Plaintiff did not have any reason to question the adequacy of Noridian's search methods; and therefore, could not have challenged them.  Indeed, Plaintiff acknowledged this fact many months before it filed its Amended Complaint.  *See* Am. Compl. Ex. 7 at 3 (stating that if responsive documents are ultimately produced, "Plaintiff [will] review the *responsive records* to determine if any further action is needed with regards to . . . *Noridian's search efforts*.") (emphases added).

Accordingly, because Plaintiff's Amended Complaint did not (and could not) challenge Noridian's search methods, Noridian is not obligated to "demonstrate that [its] search was adequate through an affidavit or other evidence" (Opp. at 18).  *See Rodriguez v. U.S. Dep't of Defense*, 236 F.Supp.3d 26, 34 (D.D.C. 2017) ("*When challenged*, the agency bears the burden of demonstrating' beyond material doubt' that its search was adequate") (emphasis added).  Absent such a challenge, FOIA does not impose an *affirmative* obligation on the agency or its contractor to demonstrate it "employed search methods reasonably likely to lead to the discovery of responsive records[.]"  Am. Compl. ¶ 66.  *See also* 5 U.S.C. § 552(a)(3).  Not surprisingly, the cases Plaintiff cites in support of this contention involve instances where the plaintiff challenged the agency's search methods based on (i) exemptions applied to documents that were *disclosed* or

(ii) the agency's adverse determination that no records have been found.[10]  Thus, in these cases, there was a basis to challenge the agency's search methods.  That is not true here.

*Second*, Plaintiff's contention that Noridian "*may very well* have additional records responsive to Plaintiff's request" (Opp. At 19) (emphasis added) is wholly speculative and had the Amended Complaint made such an allegation, it is clear it would not have been ripe for judicial review.  In other words, before a disclosure determination was made, and before a single page of records had been released, Plaintiff determined that it would not be satisfied with the production and thus asserted it may challenge the adequacy of Noridian's retrieval efforts and search methods in this litigation.  It cannot.  Plaintiff's untimely and unserious argument finds no support in the case law (and Plaintiff does not cite any).  Plaintiff asserts that "all the Court needs to determine that [its] claim is ripe" is that "Noridian has [not] provided th[e] records within FOIA's deadlines." (Opp. 23 n.18).  Not so.  An alleged violation of FOIA's statutory time limits (*see* 5 U.S.C. § 552(a)(6)(A)(i)) is different from the allegation that an entity has not "ma[de] reasonable efforts to search for [] records" (5 U.S.C. § 552(a)(3)).  There is no basis here for the latter, and Plaintiff's conflation of these allegations is frivolous.[11]

---

[10] *See, e.g., Oglesby v. Dep't of Army*, 920 F.2d 57, 67 (D.C. Cir. 1990) (stating the agency sent a letter to appellant "informing him that no records responsive to his request had been found"); *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (arguing the CIA did not conduct an adequate search and failed to meet its burden to justify withholding documents under FOIA exemptions); *Bakaj v. Dep't of Homeland Sec.*, No. 19-1580, 2023 WL 6121822 at * 3 (D.D.C. Sep. 19, 2023) (challenging document redactions produced to plaintiff); *Am. C.L. Union v. U.S. Dep't of Homeland Sec.*, 738 F.Supp.2d 93, 101 (D.D.C. 2010) (challenging adequacy of agency's search under FOIA after agency asserted exemptions to the disclosure of specific documents).

[11] Because Plaintiff hides this argument in a footnote, the Court should consider it waived.  *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (citations omitted) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument[s] are deemed waived."); *Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546, 554 n.9 (D.C. 2001) ("The bare mention of this claim in a footnote in Georgetown's brief . . . does not suffice to preserve the argument for our consideration.").

*Finally*, even assuming this Court finds that (i) Noridian is an agency, (ii) Plaintiff has alleged that Noridian's search methods are inadequate, and (iii) Plaintiff's allegations are credible, there is no reason adequate relief could not be directed to CMS—the agency that currently possesses, controls, is withholding, and has the legal authority to release the FOIA records—to review the records Noridian forwarded to CMS, review the search methods employed by Noridian, and, if warranted, direct Noridian to revise or supplement its search methods. *See Houser v. U.S. Dep't of Health and Human Servs.*, 270 F.Supp.3d 237, 239 (D.D.C. 2017) (asserting claims of inadequate search *against HHS and CMS* over a MAC search of Medicare records maintained by the MAC on behalf of CMS) (emphasis added); *Rahman,* 198 F.3d at 511 (MACs, in privity of contract with the agency administering the Medicare program, are bound by court orders directed at the agency and its contractors); ECF No. 36 at 5 ("[T]o the extent Plaintiff contends that . . . all responsive records within Noridian's possession are ultimately processed by CMS, it can pursue that challenge in its FOIA claim against CMS.").

### C.   Plaintiff's Request That This Court Order Noridian To Search For Records Is Moot

Plaintiff's contention that its FOIA "[r]equest is not moot" because "Noridian [has not] provided any evidence as to the adequacy of its *search methods and/or withholding*" (Opp. at 22) (emphasis added) misunderstands Noridian's mootness argument and again conflates distinct jurisdictional issues.   As discussed above, whether Plaintiff can challenge the adequacy of Noridian's search methods depends on (i) whether Plaintiff has shown this Court has jurisdiction over Noridian (it has not), (ii) whether Plaintiff has alleged that Noridian's search methods are inadequate (it has not), and (iii) assuming it had, *whether they are ripe for judicial review* (they are not).

Noridian's mootness argument is based on its contention that a *portion* of relief Plaintiff seeks (*i.e.*, that this Court "[o]rder Noridian . . . to expeditiously conduct a reasonable search for all records responsive to Plaintiff's [r]equest, *to the extent such a search has not already been conducted*," Am. Compl. ¶ 66(a) (emphasis added)), is not live because nearly three months *before* Plaintiff filed its Amended Complaint, Noridian conducted its search and forwarded responsive documents to CMS. *See* Am. Compl. Ex. 6.

For the first time, and in plain contradiction of its Amended Complaint, Plaintiff argues that "this representation has not been substantiated by any . . . evidence." Opp. at 22. This is false. Plaintiff's Amended Complaint is replete with several communications from Noridian to Plaintiff—including a letter from Noridian's FOIA coordinator to Mr. Reddick—in which Noridian informed Plaintiff that a search had already been conducted and forwarded to CMS. *Id.*

### D.   Plaintiff Still Has Not Demonstrated It Has Standing

Plaintiff has removed the fax transmittal page attached to the FOIA request it sent to Noridian. As Noridian stated in its Motion—and which Plaintiff ignores—the transmittal included the name, address, phone number, and email address of a California laboratory. While Plaintiff attached the transmittal to its original complaint, it is absent from its Amended Complaint. *See* Mot. at 24. The transmittal confirms what is readily apparent: The text of the FOIA request received by Noridian lacked detail and clarity regarding the requestor.

This Court's decision in *SAE Productions* controls. Yes, Mr. Reddick wrote the FOIA request on Plaintiff's letterhead; and yes, he signed the request before his Willkie Farr signature block, but as *SAE Productions* makes clear, these elements, without more, are not enough. *SAE Prods., Inc.,* 589 F.Supp.2d at 81. Plaintiff attempts to distinguish *SAE Productions* on two grounds: *First*, it argues that, unlike Mr. Reddick, the FOIA requester, an employee of SAE Productions (SAE), sought records related to himself that SAE then sued to obtain from the FBI.

13

Although this assertion ignores the fact that the SAE employee also sought records in the body of the FOIA request that were *not* related to himself, *see id.* at 78, the Court found neither to be a distinguishing factor.  Rather, the Court explained that "although Plaintiff [SAE], as a corporation, may have an agent file a FOIA request on its behalf, . . . [the requesting SAE employee] did not adequately indicate that the FOIA Requests at issue here were made on the behalf of [SAE]."  Thus, SAE did not have standing to sue.  *Id.* at 80.  That holding applies here.  Mr. Reddick did no better job than the SAE employee, who wrote on SAE letterhead but did not sufficiently identify that his FOIA requests "were made on behalf of" his employer: "No where does Mr. Emerson identify that he is President of SAE[.]"  *Id.* at 81, 82.  Letterhead and signature block were not enough, nor are they for Mr. Reddick, who did not identify his position in the firm.

 *Second*, Plaintiff contends that unlike SAE, it has "alleged it . . . has a legal obligation to receive the requested records."  Opp. at 25.  This too goes nowhere.  Tellingly, the Court "noted" that SAE had alleged that its employee, yet not itself, had a legal right to obtain the information, leaving the question of whether SAE thought it did not.  But rather than accept the converse, the Court's focus remained not on the allegations of legal rights in the complaint, but on the fact that "there are simply no factual allegations in the Complaint that would support a finding that *Mr. Emerson* [not SAE] adequately identified [in his Requests] that the three FOIA Requests in this case were made on behalf of SAE[.]"  *SAE Prods., Inc.,* 589 F.Supp.2d at 81 (emphasis added).  Here, Plaintiff cannot overcome Mr. Reddick's failure to identify the entity on whose behalf he submitted his FOIA request with the detail Plaintiff now offers in its Opposition.  The Court need not accept Plaintiff's conclusory allegations, particularly when, as is the case here, they are "unsupported by the facts alleged."  *See Rann v. Chao*, 154 F.Supp.2d 61, 64 (D.D.C. 2001).

Unable to distinguish *SAE Productions*, Plaintiff asserts that this Court's decision in *Washington Post* gives it standing. It does not. In *Washington Post*, this Court found that the requester had identified, in his FOIA request, his "staff writer" position with the publication, and also had indicated in "[t]he *body* of the letter . . . that [he] was acting as an agent of the publication." *Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstruction*, 486 F.Supp.3d 141, 152 (D.D.C. 2020). ("I am assigned full-time to cover national security and am primarily engaged in disseminating information to our worldwide readership.") (emphasis added). This is not the case here. The *body* of Mr. Reddick's FOIA letter does not specify that he was acting on behalf of Plaintiff, and unlike the Washington Post journalist, the body of Mr. Reddick's request is written strictly in the first person. *SAE Prods.*, 589 F.Supp.2d at 81 (request "was written *strictly* in the first-person, with references only to Mr. Emerson, thereby affirmatively suggesting that Mr. Emerson was in fact making the requests on his own behalf") (emphasis added).

In an attempt to justify Mr. Reddick's strict use of the first person in the request, Plaintiff cites to an unpublished case in the Northern District of Oklahoma, in which a journalist had requested certain records from a Tulsa jail on behalf of a newspaper. *World Pub. Co. v. U.S. Dept. of Justice*, No. 09–CV–574, 2011 WL 1238383 at *4 (N.D. Ok. 2011). However, like in *Washington Post*—but unlike here—the *body* of the request expressly indicated that the request was being made on behalf of the newspaper. *See id*. ("The public has an urgent need for information about inmates held under contract in the Tulsa jail because the *Tulsa World* routinely writes stories about these individuals." (emphasis included)). Moreover, contrary to Plaintiff's contention, the newspaper's request was *not* written strictly in the first person. *See id.* (It is also important to address *our* request."). And unlike here, the writer indicated her position ("City Editor") with the publication. *Id.*

Furthermore, Mr. Reddick's passing reference in his FOIA request to his colleague does not change the fact that the body of the letter affirmatively suggests that he was making the request on his own behalf.  If anything, the reference deepens the confusion given that the letter is written strictly in the first person.

Finally, Plaintiff's contention that Noridian's initial motion acknowledges that Noridian understood Plaintiff to have sent the request is a red herring.  *See* Opp. at 26.  The fact that Noridian did not assert this argument in its motion to dismiss Plaintiff's original complaint has nothing to do with whether Noridian had notice, at the time it received the FOIA request, of who—*e.g.*, Plaintiff, Mr. Reddick, or the California laboratory—had requested the records.  *See SAE Prods., Inc.*, 589 F.Supp.2d at 81 (stating that the primary purpose of providing sufficient notice is to husband the resources of "overburdened *FOIA administrators* to interpret whether a request is being made by the individual writing the request letter, by someone else mentioned in the letter, or both." (emphasis added)).

Nonetheless, the record refutes Plaintiff's position.  *See* Am. Compl. Ex. 4 ("[Mr. Reddick,] . . . the documents *you* have requested are not within Noridian's direct release control.") (emphasis added); Ex. 5 ("[Mr. Reddick,] . . . Noridian has no authority to directly release the documents *you* have requested."); *id.* ("I understand the documents *you* [Mr. Reddick] have requested. . . .") (emphasis added); Ex. 6 ("Mr. Reddick, . . . the records responsive to *your* request are not within our authority to release.") (emphasis added).

## II.   PLAINTIFF DOES NOT COME CLOSE TO ALLEGING THAT NORIDIAN IS A GOVERNMENT CONTROLLED ENTITY AND THUS A FOIA AGENCY

Assuming this Court finds it has jurisdiction because Noridian is improperly withholding agency records despite sending them to CMS, the Court need not look beyond the four corners of Plaintiff's Amended Complaint to find that it has not alleged that Noridian is a government

controlled entity.   However, should the Court decide to look beyond Plaintiff's Amended Complaint, Noridian's motion cites to agency regulations, policy, guidelines, and manuals—all available on HHS's/CMS's public website and of which this Court can take judicial notice.[12]   This law confirms that Noridian is not a federal agency for the purposes of FOIA.

> **A.**     **Plaintiff Fails To Allege Elements That Demonstrate That Noridian, A Private Contractor, Is A Government Controlled Entity**

"The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Long v. Safeway, Inc.* 842 F.Supp.2d 141, 144 (D.D.C. 2012).   It is axiomatic "that a party may not amend his complaint through an opposition brief," *Singh v. District of Columbia*, 55 F.Supp.3d 55, 70 (D.D.C. 2014), but this is exactly what Plaintiff attempts.   Plaintiff embroiders the factual allegations in its Amended Complaint, equivocates, ignores the plain language of well-settled case law, and misrepresents what Noridian has asserted during these proceedings.

Even giving Plaintiff the benefit of all reasonable inferences derived from the facts alleged, it has not alleged that Noridian is a government controlled entity for purposes of FOIA.   The Amended Complaint does not allege the presence of substantial government control over Noridian's *day-to-day* operations, it does not allege that Noridian was created pursuant to a federal statute, it does not allege that Noridian's employees are federal employees, and it cannot allege that Noridian serves a *uniquely* government function.   These are four of the six necessary factors of a government controlled entity.   *See* Mot. at 28 (citing *Ry. Lab. Execs.' Ass'n v. Consol. Rail Corp.*, 580 F. Supp. 777, 778-79 (D.D.C. 1984).

---

[12] *See supra* at § I.A.

*First*, as to whether any entity controls Noridian's day-to-day activities, Plaintiff attempts to sidestep this issue by arguing that the cases Noridian cited in support of this proposition involved an entity that did not have any authority to act on behalf of the government and another whose authority was not comparable to Noridian's. Opp. at 42. Plaintiff's diversion goes nowhere. Its attempt to pivot to a different factor of the analysis (*i.e.*, the *degree* to which the entity exercises independent authority on behalf of the government to make and implement decisions) has no bearing on whether Plaintiff alleged CMS has day-to-day control over Noridian. It did not. Plaintiff concedes as much when it asks this Court to parse the relevant federal statute (42 U.S.C. § 1395kk-1(a)(1)) to find this allegation.[13] Opp. at 42 ("[E]ven the publicly available information discussed above shows that the government exercises control over Noridian's daily activities[.]").

At best, Plaintiff's Amended Complaint can only be read to allege that the government exercises some degree of control (*e.g.*, through annual performance reviews) over some Noridian activities. However, the Amended Complaint does not come close to alleging the government controls Noridian's (or any MAC's) *day-to-day* operations.

*Second*, Plaintiff concedes that Noridian "was not created by a federal statute." *Id*. at 38. However, it now asks this Court to ignore this factor because "Noridian's governmental function exists *because of* a federal statute." *Id*. at 38. Plaintiff's attempt to reconstrue this factor is not supported by anything. It lacks all merit. Foremost, Plaintiff ignores the fact that the role of

---

[13] Plaintiff's assertion that "[t]he statute [] sets forth detailed day-to-day operational requirements for MACs" lacks merit. Opp. at 38. The statute does no such thing, and Plaintiff's own citations confirm that. *See id.* at 38-39 ("The statute . . . requires MACs to establish information security programs, which are subject to *annual* audits[.]") (emphasis added). And even if it did, CMS's identification of general requirements or *procedures* for some MAC operations is different from providing "extensive, detailed, and virtually day-to-day *supervision*" of Noridian's daily activities. *Irwin Mem'l v. Am. Nat'l Red Cross*, 640 F.2d 1051, 1055 (9th Cir. 1981). Plaintiff's equivocation goes nowhere.

government contractor exists because a federal statute or regulation—from specific enacting legislation, to annual Congressional appropriations, to operating regulations—authorizes the agency to operate with the assistance of government contractors. *See, e.g.,* 42 U.S.C. § 1395kk-1(a)(4) and (6) (setting out MAC functions and applying the Federal Acquisition Regulation, 48 C.F.R. Ch. 1, to CMS's procurement of MAC services). But surely that is not enough to clothe the contractor as a federal agency with all accompanying FOIA obligations and liabilities. And even assuming Plaintiff's attempted reformulation of this factor is part of the government controlled entity analysis, Noridian's *raison d'être* goes well beyond serving as a Medicare contractor. *See* Mot. at 28-29 ("Noridian provides health care claims management . . . to private commercial companies and state Medicaid entities") (footnote omitted).[14] In an attempt to refute this point, Plaintiff relies on *Rocap v. Indiek* and argues that courts have found "hybrid private/public entities subject to FOIA." Opp. at 39 (citing 539 F.2d 174, 180 (D.C. Cir. 1976)). But the corporation in *Rocap*—the Federal Home Loan Mortgage Corporation (known as Freddie MAC)—looks nothing like Noridian. Unlike Noridian, Freddie Mac was created *via* a "federal[] charter[];" "its Board . . . is presidentially appointed;" "its employees [are] officers and employees of the United States, for a number of purposes;" it is "subject to [] substantial federal control over its day-to-day operations;" and it is "expressly designated an 'agency.'" *Rocap*, 539 F.2d at 177, 180. *None* of these elements apply to Noridian, and Plaintiff has not made any such allegations.

*Third*, contrary to Plaintiff's contention, the claims administration role that Noridian performs has been carried out by private entities *since the inception of the Medicare Program in*

---

[14] Plaintiff's assertion that Noridian did not provide "any supporting affidavit or declaration attesting to the . . . accuracy" of this fact (Opp. at 30) is another red herring because Plaintiff did *not* allege otherwise in its Amended Complaint.

*1965*.[15]  Although Plaintiff disputes this fact (Opp. at 37), it does not cite a single source to support

its position.  This is because the provisions of the Social Security Act that created Medicare

contractors (first in 1965 as Medicare Part A fiscal intermediaries and Medicare Part B carriers,[16]

but then consolidated as one contractor type by The Medicare Prescription Drug, Improvement,

and Modernization Act (MMA) of 2003[17] under the name Medicare Administrative Contractor)

expressly and clearly contemplate that Medicare administrative functions are to be performed by

"agenc[ies]," "organizations," or "other persons."  *See, e.g.,* 42 U.S.C. § 1395kk-1(a)(3)(A); *see*

Social Security Amendments of 1965, Pub. L. No. 89-97, 79 Stat. 286 (1965) §§ 1816, 1842(a).

Thus, well before and after, as Plaintiff asserts, "FOIA was amended by Congress in 1974 . . . to

broaden the definition of 'agency' to include . . . 'government-controlled corporation,'" Opp. at

32 (citing *Rocap v. Indiek*, 539 F.2d at 175), Congress plainly intended that organizations and other

persons, *in addition to agencies*, would perform these functions.

In passing the MMA in 2003, Congress rearticulated the services that Medicare contractors

would perform.  These are the very *same* services that Plaintiff says support the allegation that

Noridian performs a government function.  Yet, in sections of the MMA, Congress expressly

distinguished between agencies, organizations, and other persons.  *See, e.g.,* 42 U.S.C. § 1395kk-

1(b)(3)(ii); (a)(A)(4)(D).  Furthermore, it awarded indemnification rights and limited liability to

MACs, which would not be necessary if MACs were federal agencies.  *Id.* at § 1395kk-1(d)(3) and

(4).  Congress thus did not believe that performance of MAC functions would transform a private

---

[15] *See* CMS, *History*, (last modified Sept. 6, 2023), at https://www.cms.gov/about-cms/who-we-are/history; Social Security Amendments of 1965, Pub. L. No. 89-97, 79 Stat. 286 (1965).
[16] *Id.*
[17] *See Medicare Prescription Drug, Improvement and Modernization Act of 2003*, Pub. L. 108-173, 117 Stat. 2380 (2003).  *See also* CMS, *Medicare & Medicaid Milestones,* (July 2015) at https://www.cms.gov/about-cms/agency-information/history/downloads/medicare-and-medicaid-milestones-1937-2015.pdf.

organization or other entity into an agency.  Had that been the case and had Congress intended for private organizations and "other person[s]" to be considered "agencies," such a distinction would be rendered superfluous.  "Where, as here, the plain language of the statute is clear, the court generally will not inquire further into its meaning.  *Qi-Zhuo v. Meissner*, 70 F.3d 136, 140 (D.C. Cir. 1995).

*Fourth*, the remainder of Plaintiff's allegations are also deficient.  For example, given that Noridian is a government contractor, Plaintiff's allegation that it receives federal funding is unremarkable.  Indeed, other than alleging that the funding is "substantial" (Am. Compl. ¶ 22), Plaintiff does not allege anything about the *nature* of the government's financial involvement with Noridian that would support its blanket allegation that Noridian is a government controlled entity.  *See* Mot. at 36.  If that were sufficient, more than one hundred thousand government contractors that receive "substantial" payment through their government funding could be federal agencies for purposes of FOIA.[18]  That cannot be.[19]  Moreover, Plaintiff's allegation that "Noridian has substantial authority to act independently on behalf of CMS and HHS" (Am. Compl. ¶ 20) is a non-starter and firmly refuted by the very facts of this case.  As already established, Noridian does not control agency records, it cannot assert exemptions or claim legal privileges over agency records, it cannot independently redact agency records (Mot. at 20 n.16), and CMS FOIA Policy prohibits it from releasing agency records without an advance directive from CMS.  It is difficult to see how Noridian has substantial authority to act independently on behalf of CMS when it lacks

---

[18] *See* ClearanceJobs, *How Many Defense Contractors Are There?* (Apr. 4, 2017), at https://news.clearancejobs.com/2017/04/04/many-defense-contractors/; *see also* GAO, *A Snapshot of Government-Wide Contracting for FY 2022*, (Aug. 15, 2023), at https://www.gao.gov/blog/snapshot-government-wide-contracting-fy-2022.

[19] *See Dow v. Caribou Chamber of Com. & Indus.*, 884 A.2d 667, 671 (Me. 2005) ("The fact that an entity receives a substantial amount of governmental funding is [] not sufficient to render that entity a public agency.").

legal authority to satisfy FOIA's basic purpose of "releas[ing] . . . government records upon request[.]"[20]  *Pub. Emps. For Env't Resp. v. Dep't of Com.,* 968 F.Supp.2d 88, 95 (D.D.C. 2013).

Unable to allege that Noridian is a government controlled entity, Plaintiff resorts to misrepresenting Noridian's website and Noridian's communications with Plaintiff.  Plaintiff says that "Noridian and its counsel have represented . . . on its public website and in communications with Plaintiff" . . . [that] Noridian is an 'agency.'"  Opp. at 28.  Noridian has done no such thing. Noridian's website does not assert it is an agency, *see* Am. Compl. Ex. 1; and to the contrary, on numerous occasions, Noridian has informed Plaintiff that it is *not* an agency.  *See* Am. Compl. Ex. 5 ("[A]s I previously explained, . . . Noridian is a Medicare Administrative Contractor and not an 'agency' as defined by [] FOIA.").

## B.    All Evidence Outside Of Plaintiff's Amended Complaint Confirms Noridian Is Not An Agency

Although unnecessary, should the Court decide to look beyond the four corners of Plaintiff's Amended Complaint, all evidence—*e.g*., the plain language of the Social Security Act that established Medicare contractors, HHS regulations, and CMS FOIA Policy—confirms that Noridian is not an agency.

Although this Court owes no deference to agency regulations interpreting FOIA, it "may consult such regulations to the extent they are helpful and not inconsistent with the statutory text." *Liberman v. U.S. Dep't of Transp.*, 227 F.Supp.3d 1, 8 (D.D.C. 2016) (citations omitted).  That is the case here.  As discussed above, the plain language of the Social Security Act contemplates that

---

[20] The two FOIA cases Plaintiff cites in support of this contention are wholly inapposite.  *See* Opp. at 36.  In *Grumman Aircraft Engineering Corporation*, the court found that the entity had "*final* decision[]" making authority not subject to review.  *Grumman Aircraft Eng'g Corp. v. Renegotiation Bd.*, 482 F.2d 710, 715 (D.C. Cir. 1973).  In *Soucie*, the entity at issue, the Office of Science and Technology, was in the Office of the President and performed functions "in the Executive Office of the President on roughly the same basis as [four other governmental bodies]." *Soucie v. David*, 448 F.2d 1067, 1074 (D.C. Cir. 1971).

organizations and even individuals would play a role in assisting the agency with the processing and payment of Medicare claims.  Consistent with this language, HHS regulations state that "[p]rivate entities performing work under a contractual agreement with the government" (*e.g.*, MACs) "are *not* agencies for the purpose of [FOIA]."  45 C.F.R § 5.3 (emphasis added); *see also* CMS FOIA Policy, § 30.7 (distinguishing the agency from Medicare contractors); CMS's Amended Answer, ¶ 2 (ECF No. 28) (CMS "avers that Noridian is not an 'agency' within the meaning of FOIA.").

HHS regulations and CMS FOIA Policy are entirely consistent with the statutory text.  A contrary interpretation would be atextual, ahistorical, overturn longstanding HHS regulation and CMS policy, and open the door to a vast *terra incognita* where thousands of private contractors that maintain agency records on behalf of federal agencies could be hauled into court even when they have no legal authority to satisfy FOIA's basic purpose of "releas[ing] . . . government records upon request[.]"  *Pub. Emps. For Env't Resp.,* 968 F.Supp.2d at 95.

## III.    PLAINTIFF'S CONTENTION THAT NORIDIAN DOES NOT ENJOY IMMUNITY FINDS NO SUPPORT IN 50+ YEARS OF LAW

Plaintiff contests that Noridian is entitled to sovereign immunity, but largely ignores its argument for official immunity.  The argument Plaintiff does assert is buried in a footnote and should be considered waived.[21]  And in any event, Plaintiff's argument fails, as does its disregard of sovereign immunity case law.  It is long settled (more than thirty years) that MACs and their predecessor contractors, Medicare fiscal intermediaries and carriers, are entitled to immunity from suit (whether a court deems doctrinally that to be sovereign immunity or official immunity) absent allegations of intent to defraud the Program or reckless disregard of their contract obligations.  *See* Mot. at 42 n.37 (citing cases).

---

[21] *See supra* § I.C.

Plaintiff plucks case law cited in Noridian's motion (*see* Mot. at 42) out of context and argues that in order for Noridian to be extended "official" immunity, Noridian must establish that its conduct was "discretionary" or "at the 'outer perimeter' of its governmental duties."  Opp. at 45 n.36.   This is nonsensical.   All MAC contract performance is discretionary (versus nondiscretionary).   And as long as the MAC performs "*within*" the outer perimeter of its official duties, it is entitled to immunity absent a finding of fraud or reckless disregard, which Plaintiff has not alleged here.  *See* Mot. at 42 n.37 (citing *Supreme Home Health Servs., Inc. v. Azar*, 380 F.Supp.3d 533, 546 (W.D. La. 2019)).

Moreover, Plaintiff's assertion that "the real party in interest rule [only] works to prevent plaintiffs who seek to use workarounds in order to bring suits against the United States [for 'money or property'] when it would otherwise be immune" is flatly incorrect and offered only in an attempt to limit this Circuit's award of sovereign immunity to MACs.  Opp. at 43.  As the legislative history demonstrates, the primary purpose of the "real party in interest" provision was to "*safeguard the interests of [MACs]* . . . with respect to their actions in the fulfillment of commitments under the contracts and agreements entered into by them with the [agency]."  S. Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965 U.S. Code Cong. & Admin. News 1943, 1992-95 (emphasis added).  In other words, the rule was intended to give comfort to MACs so that they can administer the Medicare program without being dragged into costly litigation over work done on behalf of CMS.  For this reason, Congress also awarded indemnification rights to MACs.[22]

---

[22] Plaintiff wrongly concludes that Congress would not have given MACs indemnification rights if it had intended also to bestow immunity.  Given the billions of dollars that MACs pay out in claims each year, Congress recognized that no MAC would enter into a MAC contract without the promise of statutory indemnification.  S. Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965 U.S. Code Cong. & Admin. News 1943, 1992-95.  Immunity from suit (outside the context of claims payment) is a judicially created right.  42 C.F.R. § 421.5(b), which Plaintiff misinterprets (Opp. at 43), recognizes that CMS is the real party in interest in litigation.

There is no dispute that CMS is the real party in interest in this case: Plaintiff amended its complaint to sue CMS and CMS answered.  CMS then sent Plaintiff a disclosure determination stating that it was "*withholding* . . . portions" of the record based  on the agency's deliberative decision-making process privilege; that its "review of records . . . responsive to [the] request remains active and ongoing[;]" and that it "will promptly release all non-exempt records that are responsive to [the] request."  Opp., Ex. 4 (ECF No. 34-4) at 2.

Finally, Plaintiff's contention that "Noridian has not pointed to a single case applying sovereign or official immunity to a MAC . . . in the FOIA context" proves the point.  Opp. at 44-45.  Noridian cannot prove a negative.  MACs have not had occasion to litigate their immunity in a FOIA context because their authority to fulfil FOIA's basic purpose—*i.e.*, releasing government records—is strictly limited to documents that are *publicly available* (and for which no privilege can be asserted), including routine records like lists of "Medicare contractors" and "CMS manuals."  *See* CMS FOIA Instruction, Exhibit A.  Thus, it is not surprising that over the course of the existence of MACs (*i.e.*, more than half a century), no other plaintiff has litigated a claim that MACs are subject to suit for FOIA violations.

## **CONCLUSION**

For the reasons stated above, the Court should dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim or, in the alternative, grant Noridian's motion for summary judgment.

Dated: October 27, 2023

Respectfully submitted,

*/s/ Lukman Azeez*
Kathryn Bucher (DC Bar No. 375614)
kbucher@wiley.law
Lukman Azeez (DC Bar No. 1048579)
lazeez@wiley.law
WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
Telephone: (202) 719-7000
Facsimile: (202) 719-7049

Greg Gullickson
Senior Counsel Government Programs
Blue Cross Blue Shield of North Dakota
(Affiliate of Noridian Healthcare
Solutions, LLC)
4510 13th Avenue
South Fargo, ND 58121
(701) 282-1163
Greg.Gullickson@Noridian.com

*Attorneys for Defendant*
*Noridian Healthcare Solutions, LLC*

## <u>CERTFICATE OF SERVICE</u>

I certify that on October 27, 2023, I caused Defendant Noridian's Reply in Support of

Motion to Dismiss or, in the Alternative, for Summary Judgment to be filed using CM/ECF's E-

Filing System, which will send notification of such filing to:

    Nicholas Reddick (D.C. Bar No. 1670683)
    John Tyler Knoblett (D.C. Bar No. 1672514)
    Willkie Farr & Gallagher LLP
    1875 K Street, N.W.
    Washington, DC 20006-1238
    Tel: (202) 303-1000
    Fax: (202) 303-2000
    NReddick@willkie.com
    JKnoblett@willkie.com

    Matthew M. Graves (D.C. Bar No. 481052)
    United States Attorney
    Brian P. Hudak
    Chief, Civil Division
    Jeremy Simon (D.C. Bar No. 447956)
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    Tel: (202)-252-2528

                                    */s/Lukman Azeez*
                                    Lukman Azeez